## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOE HANDS PROMOTIONS, INC. | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO.: 02-CV-3007 |
| | : | |
| HARRY O'S PUB, INC. | : | |
| d/b/a HARRY O'S PUB; | : | |
| Harry Sheppard , Jr. | : | |
| 2153 Hancock Street | : | |
| Philadelphia, PA 19148 | : | |
| | : | |
| Defendants. | | |

## PLAINTIFF'S MOTION FOR JUDGMENT BY DEFAULT PURSUANT TO RULE 55 OF THE FEDERAL RULES OF CIVIL PROCEDURE

It appearing from the records in the above-entitled action that an entry of default for want of answer or other defense was made on July 31, 2002 as to Defendants Harry O's Pub, Inc., and Harry Sheppard, Jr., for failure to plead or otherwise defend as provided by the Federal Rules of Civil Procedure; and it appearing that Defendants were properly served on June 28, 2002, and this action having come before the Court for a hearing pursuant to Rule 55 (b)(2), F.R.Civ.P. to determine as to Count I of the Complaint; and the issues having been heard and a decision having been rendered, it is this _____ day of _____, 2003, by the United States District Court for the Eastern District of Pennsylvania, **ORDERED and DECREED:**

1.      That judgment by default be and the same is hereby entered in favor of Plaintiff, Joe Hands Promotions, Inc., against Defendants, Harry O'S Pub, Inc., d./b/a Harry O's Pub and Harry Sheppard, Jr., individually in the amount of Ten Thousand Dollars ($10,000.00) as statutory damages, plus attorney's fees and costs.

1

2.     The Court will make no determination whether or not Plaintiff's claims against the

Defendants are dischargeable under Bankruptcy Code §523(a).

_____
                                                                   J.

**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF PENNSYLVANIA**

JOE HANDS PROMOTIONS, INC.      :
                                :
        Plaintiff,           :
                                :
v.                             :      CIVIL ACTION NO.: 02-CV-3007
                                :
HARRY O'S PUB, INC.         :
d/b/a HARRY O'S PUB;        :
Harry Sheppard , Jr.          :
2153 Hancock Street         :
Philadelphia, PA 19148      :
                                :
        Defendants.

**PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**

<u>Plaintiff</u>, Joe Hands Promotions, Inc., moves this Court for entry of a default judgment

against Defendant, Harry O's Pub, Inc. d/b/a Harry O's Pub and Harry Sheppard, Jr., pursuant to

Fed.R.Civ.P. 55, and states:

1.      This is an action for violation of 47 U.S.C. §605 and §553, arising out of the

      Defendants' willful and illegal interception and misappropriation of a closed circuit

      exhibition of the June 24, 2000 boxing match between Mike Tyson and Lou Savarese

      from the Hampton Park in Glascow, Scotland, including undercard or preliminary bouts

      (the fight will hereinafter be referred to as the "Event"), at closed-circuit locations, such

      as theaters, arenas, bars, clubs, lounges, restaurants and other similar type business

      establishments throughout Pennsylvania and other geographical locals.

2.      On June 28, 2002, the Defendant were duly served with the Complaint and failed to

      answer or otherwise  respond as required by law.

3.      Accordingly, the Clerk of this Court entered default against the Defendant on July 31, 2002.

4.      As a result of the entry of this default, all allegations contained in the Complaint are deemed admitted. *Nishimatsu Construction Co., v. Houston National Bank*, 515 F.2d 1200 (5th Cir. 1975).

5.      Pursuant to 47 U.S.C. §605 and §553, Joe Hands Promotions, Inc. is entitled to statutory damages against the Defendants as follows:

   a.      For each violation of the statute, damages in the amount of between One Thousand Dollars ($1,000.00) and Ten Thousand Dollars ($10,000.00), pursuant to §605(e)(3)(C)(I)(II);

   b.       For willful violation of the statute, damages in the amount of between Ten Thousand Dollars ($10,000.00) and One Hundred Thousand Dollars ($100,000.00), pursuant to §605(e)(3)(c)(ii);

   c.      For each violation of the statute, damages in the amount of between Two Hundred Fifty Dollars ($250.00) and Ten Thousand Dollars ($10,000.00), pursuant to §553(3)(A)(ii); and

   d.      For willful violation of the statute, damages up to Fifty Thousand Dollars ($50,000.00), pursuant to §553(3)(B);

   e.      Full costs, including reasonable attorneys' fees, pursuant to §605(e)(3)(B)(iii).

6.      Attached hereto as Exhibit "A" is the Declaration of Marcus Corwin, President of Joe Hands Promotions, Inc., who attests to the facts contained in the Complaint and the Memorandum of Law in Support of Plaintiff's Motion for Default Judgment.  Also attached hereto as Exhibit "B" is a copy of the affidavit of Anthony Iamurri attesting to

4

the fact that the Event was exhibited by the Defendants on June 24, 2000,  and describing the number of patrons viewing the Event.  Lastly, attached hereto as Exhibit "C," is the Affidavit of Harper & Paul, attorney for Joe Hands Promotions, Inc**.**, attesting to the attorneys' fees and costs incurred on behalf of Joe Hands Promotions, Inc. in this case.

7.        Because the amount of damages in this case is discretionary, Joe Hands Promotions, Inc. has filed an accompanying Memorandum of Law which describes the method for calculating the damages in this case.

WHEREFORE, Plaintiff, Joe Hands Promotions, Inc., requests that the Court:

a.        Enter a judgment by default against Defendant, Harry O's Pub, Inc. d/b/a Harry O's Pub and Harry Sheppard, Jr.

b.        Award statutory damages against the Defendant for each  violation in the amount of $10,000.00 each, and additional damages in the amount of $50,000.00 for each violation based on the Defendants' conduct;

c.        Award attorneys' fees in the amount of $1,830.00, and costs in the amount of $195.00 against the Defendant; and

d.        Grant to the Plaintiff such other relief as the Court deems just and proper.

**HARPER & PAUL**


BY:_____
     **SHARON N. HARVEY, ESQUIRE**
     **ATTORNEY FOR PLAINTIFF**

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOE HANDS PROMOTIONS, INC. | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO.: 02-CV-3007 |
| | : | |
| HARRY O'S PUB, INC. | : | |
| d/b/a HARRY O'S PUB; | : | |
| Harry Sheppard , Jr. | : | |
| 2153 Hancock Street | : | |
| Philadelphia, PA 19148 | : | |
| | : | |
| Defendants. | | |

## CERTIFICATE OF SERVICE

I, Sharon N. Harvey, HEREBY CERTIFY that a true and correct copy of the Plaintiff's

Motion for Default Judgment, Memorandum of Law, Order and Exhibits foregoing was served

by Certified  Mail postage prepaid on  this 6th  day of  May, 2003 as follows:

Harry O's Pub, Inc                     Certified Mail# 7000 0520 0021 1042 2749
2153 Hancock Street                    Return Receipt Requested
Philadelphia, PA 19148

Harry Sheppard                         Certified Mail# 7000 0520 0021 1042 2756
2153 Hancock Street                    Return Receipt Requested
Philadelphia, PA 19148

By:_____
      SHARON N . HARVEY, Esquire
      Attorneys for Plaintiff
      Joe Hands Promotions, Inc.
      140 West Maplewood Avenue
      Philadelphia, PA 19144
      Tel:    215-844-4848

6

## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

---

JOE HANDS PROMOTIONS, INC.  :
            :
    Plaintiff,      :
            :
v.            :  CIVIL ACTION NO.: 02-CV-3007
            :
HARRY O'S PUB, INC.    :
d/b/a HARRY O'S PUB;   :
Harry Sheppard , Jr.     :
2153 Hancock Street     :
Philadelphia, PA 19148   :
            :
    Defendants.

---

## PLAINTIFF'S MEMORANDUM OF LAW
## IN SUPPORT OF REQUEST FOR JUDGMENT BY DEFAULT

  Plaintiff, Joe Hands Promotions, Inc., by its attorneys, Harper & Paul, files this

Memorandum of Law and says:

### POSTURE OF THIS CASE

  On Joe Hands Promotions, Inc. filed suit against Harry O's Pub, Inc. d/b/a Harry O's Pub

and Harry Sheppard, Jr..  The lawsuit charged the Defendant with a violation of Section 705 of the

Federal Communications Act of 1934, as amended, 47 U.S.C. §§553 and 605 (the "Statutes").

  Upon the failure of the Defendants, Harry O's Pub, Inc. d/b/a Harry O's Pub and Harry

Sheppard, Jr., to timely file an Answer or any other responsive pleading, the Plaintiff filed and

requested that a default judgment be entered against the Defendant.  On July 31, 2002, a default

was so entered.  Pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure, a default

judgment is appropriate.

  Once a default judgment is entered, "it generally is treated as a conclusive and final

adjudication of the issues necessary to justify the relief awarded and is given the same effect as between the parties as a judgment rendered after a trial on the merits." Wright, Miller & Kane, Federal Practice and Procedure, §2684, p. 419-20. Therefore, all of the facts alleged in the Complaint should be considered as true and are binding on the Defendant. See Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978); Wright, §2688, p.444. Accordingly, the only issue remaining to be decided in this case is the amount of damages to which Plaintiff is entitled from the Defendant as a result of her violation of the Statute.

## FACTS

Joe Hands Promotions, Inc. entered into a closed-circuit television license agreement (the "License Agreement") to exhibit the closed-circuit telecast of the June 24, 2000, Championship boxing match between Mike Tyson and Lou Savarese, from the Hampden Park in Glascow, Scotland, including undercard or preliminary bouts (the boxing match and all related bouts are collectively referred to as the "Event"), at closed-circuit locations such as theaters, arenas, bars, clubs, lounges, restaurants and the like throughout Pennsylvania. The License Agreement is attached hereto as Exhibit "A" and incorporated herein by reference.

In the State of Pennsylvania, the Event was legally available to the public only through very limited means. A commercial establishment, such as a bar, restaurant or lounge, could receive and broadcast the Event only after entering into a contractual agreement with Joe Hands Promotions, Inc.. A residential cable subscriber could only obtain the Event by purchasing it for an additional fee through the subscriber's residential pay-per-view cable system.

The interstate satellite transmission of the Event was electronically coded or scrambled and was not intended for the use of the general public. If a commercial establishment was authorized by Joe Hands Promotions, Inc. to receive the Event, it was provided with the electronic

8

decoding equipment and the satellite coordinates necessary to receive the signal. For an authorized residential pay-per-view customer to receive the Event, its cable system would "authorize" the residential converter to enable it to be capable of unscrambling the transmission.

The authorized commercial establishments which contracted with Joe Hands Promotions, Inc. were required to pay to Joe Hands Promotions, Inc., sub-license fee. In addition, these establishments were contractually required to charge their patrons an admission fee for attending the exhibition of the Event.

The Defendant is the owner and/or operator of Harry O's Pub, a commercial establishment located at 2153 Hancock Street, Philadelphia, PA 19148. On June 24, 2000, without authorization, the Defendant or agents, servants and/or employees of the Defendant intercepted and received or assisted in the interception and receipt of the transmission of the Event. They thereupon broadcast or assisted in the broadcast of the Event to the patrons of Harry O's Pub.

On the night of the Event, Anthony Iamurri observed the Event being telecast to the patrons of Harry O's Pub. A copy of Anthony Iamurri Affidavit is attached hereto as Exhibit "B" and incorporated herein by reference. While the Event was being broadcast in Harry O's Pub, Anthony Iamurri observed that there were approximately nine (9) patrons located on the premises. Anthony Iamurri also handed a cease and desist letter to an agent of the Defendant.

As Joe Hands Promotions, Inc. maintained proprietary rights in the signal of the Event, all unlawful acts of interception, receipt and broadcast of the signal by the Defendant were in violation of Joe Hands Promotions, Inc. rights and caused Joe Hands Promotions, Inc. to suffer damages.

## DAMAGES UNDER THE COMPLAINT

The Statutes in General

47 U.S.C. §605 provides inter alia that:

> [n]o person not being authorized by the sender shall intercept any
> radio communication and divulge or publish the existence, contents,
> substance, purport, effect or meaning of such intercepted
> communication to any person.  No person not being entitled thereto
> shall receive or assist in receiving any interstate or foreign
> communication by radio and use such communication (or any
> information therein contained) for his own benefit or for the benefit
> of another not entitled thereto.

47 U.S.C. §605(a).  Thus, it protects against the theft of satellite communications such as the

Event.  See e.g., International Cablevision, Inc. v. Sykes, 75 F.3d.123 (2d Circ. 1996),  Cimenelli

v. Cablevision, 583 F.Supp. 158, 161 (E.D.N.Y. 1984); Cablevision Systems Development Co. v.

Annasonic Electronic Supply, No. CV-83-5189 (E.D.N.Y. February 10, 1984); Cablevision

Systems Coup. v. DePalma, No. CV 87-3528 (E.D.N.Y. January 17, 1989); California Satellite

Systems v. Seimon, 767 F.2d 1364 (1985); Quincy Cablesystems, Inc. v. Sully's Bar, Inc., 640 F.

Supp. 1159 (D. Mass. 1986); National Subscription Television v. S & H TV, 644 F.2d 820 (9th

Cir. 1981); National Football League v. Alley, Inc., 624 F. Supp. 6 (S.D. Fla. 1983).  47 U.S.C.

§553(a)(1) provides identical protection for cable communications.  Home Box Office v. Gee-

Cee, Inc. 838 F. SUPP. 436 (E.D. Mo. 1993).  Accordingly, all acts of unlawful interception,

receipt and broadcast of the signal of the Event were in violation of the Federal Communication

Act.

In order to deter the unlawful use of communications such as the Event, Congress

specifically designed the Statutes to provide "both Prosecutor[s] and civil plaintiffs [with] the

legal tools they need to bring piracy under control."  Trademark & Satellite Acts, P.L.-6678, 1988

U.S. Cong. & Admin. News 7, 5577, 5658; See U.S. v. Scott, 783 F. SUPP. 280, 281 (N.D. Miss.

1992).  Therefore, the Statutes include severe penalties, both civil and criminal, for those who intercept, receive and/or broadcast protected communications.  See Scott, 783 F. SUPP. at 281; See generally §§553(b) and 605(e).[1]  Moreover, Congress has equated a violation of the Statutes to theft of service.  See 1988 U.S. Code Cong. & Admin. News. 7, 5577, 5642-43.  In 1988, in an effort to further deter theft, Congress amended the Statutes to provide for more severe penalties for violations.  Id. at 5657.

Accordingly, a party aggrieved under the Statutes may recover statutory damages of up to $10,000.00 for each violation thereof.  §§553(c)(3)(A)(ii) and 605(e)(3)(C)(I)(II).  Moreover, if the Court finds that the violation of the Statutes was committed "willfully and for purposes of direct or indirect commercial advantage or private financial gain..." the Court may award additional damages of up to $100,000.00 for each violation under  §605(e)(3)(C)(ii) and $50,000.00 under §553(c)(3)(B).  Furthermore, a Court shall award full costs, including reasonably attorneys' fees.  §605(e)(3)(B)(iii).  Because Joe Hands Promotions, Inc. constitutes an aggrieved party under the Statutes, see §§553(C)(1) and 605(D)(6), Joe Hands Promotions, Inc. is entitled to damages from the Defendant for her unlawful acts.

It is obvious that the Defendant's interception, receipt and broadcast of the Event was not innocent.  Both §§ 553(c)(3)(C) and 605(e)(3)(C)(iii) provides for limited damages to the aggrieved party "[i]n any case where the court finds that the violator was not aware and had no reason to believe that his acts constituted a violation of this section..."  However, as stated by Congress, this type of situation occurs rarely,

      [i]t is not intended that this provision serve in any way as a defense

---

[1] The criminal penalties include fines and imprisonment.  See §§553(b)(1) and (2); and 605(e)(1) and (e)(2).

> to a determination of liability under subsection (a), but rather only
> as a provision to be exercised in the court's discretion for those rare
> instances of ignorance of the law on the part of one adjudged to
> have violated it.

Cable Communications Policy Act, P.L. 98-549, 5 U.S. Cong. News. '84 Bd. Vol. 8, 4745, 4751.

Clearly, this was not the instant situation.

As Harry O's Pub is a commercial establishment, it could not have obtained the transmission or the Event had the Defendant not undertaken specific wrongful actions to intercept and/or receive and broadcast the telecast. In order for an unauthorized commercial establishment to receive a broadcast such as the Event, there must be some wrongful action, such as using an unauthorized decoder, obtaining cable service and illegally altering the cable service to bring the signal of the Event into the establishment or moving an unauthorized decoder from its authorized location to the establishment. Because the Defendant must have committed wrongful acts in order to intercept and/or receive and broadcast the Event, there is no basis for limiting Joe Hands Promotions, Inc. relief to the $10,000 provided for in §§553(c)(3)(A)(ii) and 605(e)(3)(C)(I).

### Statutory Damages Under §§553(c)(3)(A)(ii) and 605(e)(3)(C)(I)(II)

As its first basis for relief, Joe Hands Promotions, Inc. is requesting statutory damages pursuant to §605(e)(3)(C)(I)(II). See Cable/Home Communication Corp. v. Network Productions, Inc., 902 F.2d 829, 850 (11th Cir. 1990)[2] Pursuant to the Statute, the amount of statutory damages to which Joe Hands Promotions, Inc. is entitled for the violation shall be not less than $1,000.00 and not more than $10,000.00.

For the reasons set forth, Joe Hands Promotions, Inc. believes it is entitled to full statutory damages in the amount of $10,000.00 for the violation of the Statute.

---

[2] It is in the Plaintiff's discretion whether to elect to receive actual or statutory damages. Id.

12

As stated supra, on June 24, 2000, the Defendant or agents, servants and/or employees of the Defendant intercepted and received or assisted in the interception and receipt of the live telecast of the Event.  They then broadcast or assisted in the broadcast of the Event to the patrons at Harry O's Pub for viewing therein.  The patrons at Harry O's Pub purchased meals and/or drinks while viewing the Event.  The patrons whom the Defendant permitted without authorization to view the Event would otherwise only have been able to view the Event at a commercial establishment by paying an admittance fee at an establishment authorized by Joe Hands Promotions, Inc. to receive the transmission.

The Defendant broadcast the Event to the patrons at Harry O's Pub without paying any sub-license fees to Joe Hands Promotions, Inc.  To date, no amount has been paid to Joe Hands Promotions, Inc. to compensate it for the illegal broadcast of the Event in Harry O's Pub.

Statutory damages are appropriate where actual damages are difficult to prove.  Laureate Textile Corp. v. Alton Knitting Mills, Inc., 519 F. SUPP. 730, 732 (S.D.N.Y. 1981); Lottie Jonlin Thomas Trust v. Crown Publishers, Inc., 592 F.2d 651, 657 (2d Cir. 1978).  The lack of adequate proof of any particular element causes the Court to rely, within its discretion, on the statutory limitations.  F.W. Woolworth Co. v. Contemporary Arts, Inc., 344 U.S. 228, 233 (1952).  In the instant case, as more fully discussed infra, it would be impossible to determine the full extent of the profits lost by Joe Hands Promotions and the additional damages sustained by Joe Hands Promotions, Inc. as a result of the Defendant's unlawful actions.

Accordingly, it is appropriate for Joe Hands Promotions, Inc. to elect to receive statutory damages.

Because the Statute defining statutory damage awards for violations of the Copyright Act of 1976, 17 U.S.C. §101 et seq. (the "Copyright Act") is similar to the Statute, its case law is

instructive for the determination of the amount of statutory damages to which Joe Hands

Promotions, Inc. is entitled.[3]

According to the United States Supreme Court, when determining the applicable statutory

damage award under the Copyright Act, the amount of profits lost by the copyright holder is not

the only criteria for a Court to consider.  Woolworth, 344 U.S. at 233.  Rather,

> a rule of liability which merely takes away the profits from an
> infringement would offer little discouragement to infringers.  It
> would fall short of an effective sanction for enforcement of the
> copyright policy.  The statutory rule, formulated after long
> experience, not merely compels restitution of profit and reparation
> for injury but also is designed to discourage wrongful conduct.  The
> discretion of the court is wide enough to permit a resort to statutory
> damages for such purposes.  Even for uninjurious and unprofitable
> invasions of copyright the court may, if it deems it just, impose a
> liability within statutory limits to sanction and vindicate the
> statutory policy.

Id. at 233.

Statutory damages under the Copyright Act should serve to compensate the copyright

owners and to provide a detriment to would be infringers.  Lottie Joplin Thomas Trust, 592 F.2d

at 657; Laureate, 519 F. Supp. at 732.  Factors to consider in determining a statutory damage

award include: (1) "the market value of the rights infringed", (2) "the revenue lost by the plaintiff

and profits gained by the defendant", (3) the infringers state of mind" and (4) "deterrence of future

---

[3] 17 U.S.C. §504(c)(1) provides as follows:

**Statutory damages**.  (1) Except as provided by clause (2) of this
subsection, the copyright owner may elect, at any time before final
judgment is rendered, to recover, instead of actual damages and profits,
an award of statutory damages for all infringements involved in the action,
with respect to any one work, for which any one infringer is liable
individually, or for which any two or more infringers are liable jointly and
severally, in a sum not less than $500 or more than $20,000 as the court
considers just.

infringement: <u>Basic Books, Inc. v. Kinko's Graphics Corp.</u>, 758 F. SUPP. 1522, 1544 (S.D.N.Y. 1991).

The sub-license fees which Joe Hands Promotions, Inc. charges to an authorized commercial establishment are based upon specific factors, including the capacity of the bar.  The Anthony Iamurri Affidavit establishes that the capacity of Harry O's Pub is at least 60 patrons. <u>See</u> Exhibit "B".  Thus, based on its capacity, Joe Hands Promotions, Inc. would have requested from Harry O's Pub a sub-license fee of approximately $1,100.00 in order to authorize it to broadcast the Event.

Applying the Courts' analysis from its decisions under the Copyright Act, in the instant case, the lost income from the sale of the Event to Harry O's Pub represents only a starting place for the determination of the amount of damages to which Joe Hands Promotions, Inc. is entitled for the Defendant's wrongful acts.

When Congress enacted the Statute, it was specifically cognizant of the problems of theft of various wire communications, including closed-circuit programming, such as the Event.  As stated in the House Bill:

> The Committee is extremely concerned with a problem which is increasingly plaguing the cable industry-the theft cable service. This problem has taken on many forms from the manufacture and sale of equipment intended to permit reception of cable services without paying for it, to apartment building dwellers "tapping" into cable system wire in a building's hallway that issued for providing service to a neighbor's apartment unit, to the sale by building superintendents of cable converters left behind by previous tenants to new tenants.  Such practices does not only often permit one to obtain cable service without paying the installation and hookup costs, but also, for instance, involve individuals gaining access to premium movie and sports channels without paying for the receipt of those services.
>
> Theft of services deprives the cable industry of millions of dollars of revenue each year which it should otherwise be receiving.  The

> Committee believes that theft of cable service poses a major threat
> to the economic viability of cable operators and cable programmers,
> and creates unfair burdens on cable subscribers who are forced to
> subsidize the benefits that other individuals are getting by receiving
> cable service without paying for it.

Cable Communications Policy Act of 1984, House Report No. 98-934, 5 U.S. Cong. News. '84

Bd. Vol. -6, 4655, 4720.  Moreover, according to Congress, these incidents threaten to undermine

the satellite industry and adversely impact legitimate satellite dealers and satellite programmers

who otherwise would be receiving payment for their programming or descrambling devices.  See,

U.S. v. Scott, 783 F. SUPP. 280, 281 (N.D. Miss. 1992) (quoting 1984 U.S. Code Cong. &

Admin. News 4655, 4746).

The impact of theft of this type is far-reaching throughout the entertainment industry.

According to the Office of Cable Signal Theft of the National Cable Television Association, the

cable industry loses an estimated 3 Billion Dollars annually as a result of the theft of cable signals.

Cable Piracy Fact Sheet.  Not only do these acts of theft cause legitimate businesses to lose

money, but they also weaken the cable signal, thereby adversely affecting the quality of the picture

received by authorized users.  Id.

Theft has also adversely impacted the movie industry.  Theft of American movies and

television programming, including satellite and cable television programming, has increased 27%

since 1990.  News Release, March 18, 1992, Motion Picture Export Association of America, Inc.

("MPEAA").  According to Jack Valenti, MPEAA's Chairman and Chief Executive Officer,

"[p]iracy is the single biggest problem facing the motion picture industry today".  Id.  These thefts

cost the industry over 1.2 Billion Dollars annually.  Id.

Similarly, the unauthorized interception, receipt and broadcast of the Event and other

closed-circuit programming threatens the viability of the closed-circuit industry.  There are no

16

countervailing social or policy considerations which justify the unauthorized interception of these

broadcasts.  Cf., ON/TV of Chicago v. Julien, 763 F.2d 839, 843 (7th Cir. 1985); Subscription

Television of Greater Washington v. Kaufman, 606 F. SUPP. 1540, 1544 (D.D.C. 1985).

In addition to the lost revenue which would have been derived from the delivery and

exhibition of the Event to Harry O's Pub and its patrons, Joe Hands Promotions, Inc. should

receive additional compensation to account for any profits gained by the Defendant for meals

and/or drinks sold to the patrons as a indirect result of her unlawful acts.  Moreover, Joe Hands

Promotions, Inc. should be further compensated as it has been deprived of the "value, benefits and

profits derived" from the unauthorized broadcast of the Event to Harry O's Pub and its patrons as

well as the value of "business investment, business opportunities and goodwill."  See American

Television and Communications Corp. v. Floken, Ltd., 629 F. SUPP. 1462, 1466 (M.D. Fla.

1986).  As a result of theft by the Defendants and others, Joe Hands Promotions, Inc. has lost and

will continue to lose as customers legitimate commercial establishments which are unwilling and

financially unable to compete with those unauthorized commercial establishments, such as Harry

O's Pub, which steal sports and other closed-circuit programming.  Because these unauthorized

commercial establishments offer the stolen programming to their patrons for no fee or for a fee

which is less than the authorized establishments are required to charge, the legitimate commercial

establishments with the right to broadcast closed-circuit programming can not attract paying

customers.  As a result, the authorized commercial establishments fail to recover the sub-license

fees paid, suffer the loss of patrons and incur financial loss.  When the unauthorized commercial

establishment advertises the availability of the stolen programming, the number of patrons at the

unauthorized commercial establishment increases and, as a result, Joe Hands Promotions, Inc. and

the authorized commercial establishments suffer additional losses.

Theft of closed-circuit broadcasts, such as the Event, by unauthorized commercial establishments, such as Harry O's Pub, adversely affects both Joe Hands Promotions, Inc. and its customers. Joe Hands Promotions, Inc. pays substantial fees to obtain the right to sub-license the broadcast of closed-circuit programming to authorized commercial establishments. Joe Hands Promotions, Inc. primary source of revenue is the sub-license fees which it charges to authorized commercial establishments for the right to broadcast closed-circuit sports and entertainment programming such as the Event.

Clearly, the Defendant's actions have the potential to erode the base of Joe Hands Promotions, Inc. customers. Each patron of Harry O's Pub is lost as a future patron of authorized broadcasts. See Cox Cable Cleveland Area, Inc. v. King, 582 F. Supp. 376, 381 (E.D. Ohio 1983). But for the Defendant's unauthorized broadcast of the Event, all or some of the patrons of Harry O's Pub would have become paying patrons and directly increased the fees paid to Joe Hands Promotions, Inc. by its authorized commercial establishments.

Further, Joe Hands Promotions, Inc. has suffered damage to its goodwill and reputation and loss of its right and ability to control and receive fees for the transmission of the Event. See Quincy Cablesystems, Inc., 640 F. Supp. at 1161. When negotiating sub-license fees, Joe Hands Promotions, Inc. generally represents to legitimate commercial establishments the locations of other authorized commercial establishments licensed to receive the programming. Therefore, when an unauthorized commercial establishment intercepts, receives and broadcasts closed-circuit programming, such as the Event, Joe Hands Promotions, Inc. reputation and goodwill suffers from what appears like a misrepresentation. Joe Hands Promotions, Inc. should receive compensation from the Defendant for these losses suffered. Furthermore, an incalculable element of damages is the ill-will and possible loss of future business from legitimate commercial establishments which

18

refuse to pay sub-license fees because they cannot compete with unauthorized commercial establishments which steal closed-circuit programming, such as the Event.

The continued viability of Joe Hands Promotions, Inc. as a business concern depends upon the willingness and ability of legitimate commercial establishments to pay sub-license fees for the right to broadcast closed-circuit sports and entertainment programming, such as the Event.  If such programming is made available to the public for no fee at unauthorized commercial establishments which have not purchased the right to broadcast such programming, legitimate commercial establishments will find no reason to purchase the right to legally broadcast this type of programming.

Joe Hands Promotions, Inc. is operating a legitimate business of the type that Congress specifically sought to protect.  That protection, however, is threatened by the Defendant's actions. This Court must use the full power of the Statute to punish the Defendant for her acts of theft.  If rampant theft of service is allowed to go unpunished and Joe Hands Promotions, Inc. and similar distributors of protected communications continue to suffer losses as a result of the theft, these businesses could be forced to curtail distribution of this programming, thereby depriving the people of the State of Pennsylvania of the ability to view these sports and entertainment events.

The arguments set forth herein are also applicable in supporting damages under 47 U.S.C. §553(c)(3)(A)(ii) in the amount of $10,000.00.

Given the benefits which the Defendant received from the broadcasts of the Event and given the additional damages which Joe Hands Promotions, Inc. has suffered, it is fair and reasonable to assess against the Defendant and award to Joe Hands Promotions, Inc. statutory damages in the amount of $10,000.00, pursuant to §§553(c)(3)(A)(ii) and $10,000.00 under 605(e)(3)(C)(I)(II).  Clearly, given the wrongfulness of the Defendant's acts and the losses

19

suffered by Joe Hands Promotions, Inc., it is entitled to these damages.

### Damages for Willful Act Under §§553(c)(3)(B) and 605(e)(3)(C)(ii)

As its second basis for relief,  Joe Hands Promotions, Inc. is requesting damages pursuant to §§553(c)(3)(B) and 605(e)(3)(c)(ii) because the Defendant's actions were willful and "for purposes of direct or indirect commercial advantage or private financial gain".  In ON/TV of Chicago v. Julien, 763 F.2d 839, 844 (7th Cir. 1985), the Court of Appeals for the Seventh Circuit interpreted willful under the Statute as "disregard for the governing statute and an indifference to its requirements".  Id. at 844 (quoting TransWorld Airlines, Inc. v. Thurston, 469 U.S. 111, 127 (1985)).

As set forth supra, because of the absence of any way in which the Defendant could have "innocently" accessed the broadcast of the Event, It is apparent that she specifically and willfully acted to illegally intercept the transmissions of the Event for her commercial advantage. Moreover, as set forth supra, after Anthony Iamurri witnessed the Event being broadcast in Harry O's Pub, he handed a cease and desist letter to the Defendant's agent which stated that the broadcast was illegal and should cease.

Clearly, the Defendant's actions indicate disregard of and indifference to the Statute.  The Defendant knew that it was wrong to receive, intercept and divert the cable service and the Event and to broadcast it in Harry O's Pub.  Similarly, the Defendant knew that her actions were unlawful particularly after receiving the case and desist letter, yet, with total disregard for the Statute.  She nevertheless intercepted and received the transmission and broadcast it to the patrons of Harry O's Pub.  Accordingly, because the Defendant's actions were willful, Joe Hands Promotions, Inc. is entitled to additional damages.

The Copyright Act provides this court with a further basis for finding that the Defendant's

actions were willful.  Here too, because the Statute related to damages for willful violations of the

Copyright Act is similar to the Statute, the Copyright Act is again instructive for the instant case.[4]

In Fitzgerald Publishing Co., Inc. v. Baylor Publishing Co., Inc.. 807 F.2d 1110 (2d Cir.

1986), aff'd., 862 F.2d 304 (1988) the Court of Appeals for the Second Circuit analyzed the

criteria for determining whether actions constitute willful conduct.  According to the Court, "a

defendant's knowledge that its actions constitute an infringement [of the Copyright Act]

establishes that the defendant acted willfully" within the meaning of the Copyright Act.  Id. at

1115; Fallaci v. New Gazette Literacy Corp., 568 F. Supp. 1172, 1173 (S.D.N.Y. 1983) (citing 3

Nimmer on Copyright, §14.04 [B][3], at 14-27, 14-28 (1982).  There is no need to prove malice or

actual knowledge in order to establish a willful violation; constructive knowledge is sufficient.

See Fitzgerald, 807 F.2d at 1115; Cable/Home, 902 F.2d at 851.  In the instant case, the

Defendant's actual knowledge that her acts were wrongful should be sufficient to demonstrate that

her acts were willful.

Regarding the second prong of the damages test under §§553(c)(3)(B) and

605(e)(3)(C)(ii), it is patently obvious that the Defendant's actions were "for the purposes of direct

or indirect commercial advantage or private financial gain."  §§553(c)(3)(B) and 605(e)(3)(C)(ii).

As stated by Congress,

> [i]t is further intended that the term "direct or indirect commercial
> advantage or private financial gain" be interpreted broadly by both
> the courts in deciding actions, and the Department of Justice in
> pursuing actions, under this section.  Those who willfully violate

---

[4] The Copyright Act provides as follows:

> (2) In a case where...court finds, that infringement was committed wilfully,
> the court in its discretion may increase the award of statutory damages to
> a sum of not more than $100,000.  17 U.S.C. §504(c)(2).

subsection (a) and directly or indirectly enjoy commercial gain from
those violations, may be reached.

Cable Communications Policy Act, P.L. 98-549, 5 U.S. Cong. News. '84 Bd. Vol.-8, 4745, 4750.

Because the Event was broadcast to the patrons of Harry O's Pub, the Defendant's purpose and intent in exhibiting the Event was to secure a private financial gain and direct commercial advantage by misappropriating Joe Hands Promotions, Inc. licensed exhibitions and infringing upon Joe Hands Promotions, Inc. rights, while avoiding proper payment to Joe Hands Promotions, Inc.

By interpreting the statutory language broadly as directed by Congress, the Court must find that the Defendant's actions were for her commercial gain as set forth in the Statute. Accordingly, as the Defendant's actions were willful and for commercial advantage, Joe Hands Promotions, Inc. is entitled to additional damages under the Statute.

Generally, it is reasonable to increase an actual or statutory damages award by a specific percentage to penalize the Defendants for willful acts. See e.g. Laureate, 519 F. Supp. at 733 (an increase of seven times the actual damages for willful acts); Cablevision Systems Corp. v. Maxie's North Shore Deli Corp., 1991 WL 58350, No. CV 88 2834 (ASC) (E.D.N.Y. 1991) (the court awarded five times the statutory damages for willful violations); Cable/Home, 902 F.2d 829 (additional damages of five times actual damages for willful conduct).

As a willful violator of this Statute, the Defendant must be held accountable for a substantial amount above the market value of the sub-license fees to broadcast the Event. Otherwise, other commercial establishments "would be encouraged to violate the law knowing the full extent of their liability would not exceed what they would have to pay for a license on the open market." Fallaci, 568 F. Supp. at 1174.

Under the Copyright Act, "when the infringement is willful, 'deterrence of future

22

violations is a legitimate consideration' because 'defendants must not be able to sneer in the fact of copyright owners and copyright laws'." Cable/Home, 902 F.2d at 851 (quoting International Korwin Corp. v. Kowalczyk, 855 F.2d 375, 383 (7th Cir. 1988); See also Chi-Boy Music v. Charlie Club, Incorporated, 930 F.2d 1224, 1230 (7th Cir. 1991). Similarly, in the instant case, the award of additional damages must be sufficiently significant to deter the Defendant and other unauthorized commercial establishments from stealing protected communications.

Accordingly, it is proper for this Court to award to Joe Hands Promotions, Inc. additional damages in an amount up to $150,000.00 to compensate it for the Defendant's willful acts in connection with the event.

### Attorneys' Fees and Costs

As its third basis for relief, Joe Hands Promotions, Inc. is requesting payment for its attorneys' fees and costs pursuant to §§553(c)(2)(C) and 605(e)(3)(B)(iii). Pursuant to the §605(e)(3)(B)(iii), said award is mandatory. Section 605(e)(3)(B)(iii) states, "(the Court... shall direct the recovery of full costs, including awarding reasonable attorneys' fees..." See Maxie's, 1991 WL 58350, No. CV 88 2834.

Attached hereto as Composite Exhibit "C" and incorporated herein by reference is an Affidavits of Sharon N. Harvey, counsel for Joe Hands Promotions, Inc., which sets for the amount of attorneys' fees assessed and costs advanced through November 14, 2002 in connection with this case. Said amount totals $2,025.00.

### CONCLUSION

The need for substantial awards to compensate those aggrieved under the Statute and to deter the Defendant and similar individuals and entities has already been recognized in this

23

jurisdiction and other jurisdictions.  For the reasons set forth herein, the Plaintiff respectfully

requests the aforesaid relief.

Respectfully submitted,


BY:_____
SHARON N. HARVEY, ESQUIRE
Attorneys for Plaintiff
Joe Hands Promotions, Inc.
140 West Maplewood Avenue
Philadelphia, PA 19144
(215) 844-4848

24

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF PENNSYLVANIA**

JOE HANDS PROMOTIONS, INC.          :
                                    :
            Plaintiff,              :
                                    :
v.                                  :          CIVIL ACTION NO.: 02-CV-3007
                                    :
HARRY O'S PUB, INC.                 :
d/b/a HARRY O'S PUB                 :
and Harry Sheppard, Jr.             :
2153 Hancock Street                 :
Philadelphia, PA 19148              :
                                    :
            Defendants.             :
                                    :

## <u>CERTIFICATE OF SERVICE</u>

I, SHARON N. HARVEY, Esquire, hereby certify that on this 6th day of May, 2003,

a copy of the foregoing Motion for Default Judgment, Memorandum of Law and proposed Order

was sent by certified mail postage prepaid as follows:

Harry O's Pub, Inc                  Certified Mail# 7000 0520 0021 1042 2749
2153 Hancock Street                 Return Receipt Requested
Philadelphia, PA 19148


Harry Sheppard                      Certified Mail# 7000 0520 0021 1042 2756
2153 Hancock Street                 Return Receipt Requested
Philadelphia, PA 19148



                                    _____
                                    SHARON N. HARVEY
                                    Attorney for Plaintiff
                                    Harper & Paul
                                    140 West Maplewood Avenue
                                    Philadelphia, PA 19144
                                    (215) 844-4848

25

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JOE HANDS PROMOTIONS, INC. :<br>:<br>   Plaintiff,   :<br>:<br>vs.  :<br>:<br>HARRY O'S PUB, INC. :<br>d/b/a HARRY O'S PUB :<br>and Harry Sheppard, Jr. :<br>2153 Hancock Street :<br>Philadelphia, PA 19148 :<br>:<br>   Defendants.   : | Civil Action No. 02-CV-3007 |

## <u>ORDER</u>

AND NOW, this _____ day of _____, 2003, upon consideration of Plaintiff's unopposed Motion for Default Judgement, and request for assessment of damages, and after hearing , it is ORDERED that JUDGMENT is entered in favor of plaintiff, Joe Hands Promotion, Inc., and against Defendant, Harry O' Pub, Inc., d/b/a/ Harry's Pub and against Harry Sheppard, Jr. (which sum includes the plaintiff's reasonable attorney's fees), in the sum of $12,025.00 (consisting of (a) $10,000.00 in statutory damages, (b) $1,830.00 in attorney fees, and (c) $195.00 in cost); and

BY THE COURT:

_____

_____ J.